## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MITCHELL REDDICK,** | : | **Civil No. 1:11-CV-1600** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **CUMBERLAND COUNTY PRISON,** | : | |
| **et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

On August 25, 2011, the plaintiff, Mitchell Reddick, a prisoner housed at the

Cumberland County Prison, filed this federal civil rights action. (Doc. 1)  Reddick's

*pro se* complaint is a spare document, which simply alleges as follows:

> "On June 24, 2011 I was arrested in NJ. On Aug. 2, 2011 I was
> extradited to PA. On Aug. 4, 2011 I was brought to Cumberland County
> Prison. Upon arriving I told them my name. Aug. 19, 2011 after
> countless contact I'm being detained under the name Lameek Reddick.
> I contacted the booking office who verified by fingerprints I'm Mitchell
> not Lameek....."

(Doc.1)

On the basis of this alleged misnomer relating to his first name, Reddick asserts

that he is "being held under false imprisonment."(Id.)  Reddick's complaint then

1

names the prison, the warden, the deputy warden, a corrections captain, a corrections

sergeant and two corrections officers as defendants, and seeks far-reaching injunctive

and compensatory relief from these defendants, including a court order "to send the

FBI to Cumberland County Prison to issue a injunction for [Reddick's] release", as

well as damages in the amount of $1,000,000. (Id.)

Along with this *pro se* complaint, Reddick has filed a motion for leave to

proceed *in forma pauperis*. (Doc. 4)    While we will grant the motion to proceed *in

forma pauperis*, as part of our legally-mandated screening of *pro se*, *in forma

pauperis* cases, we have carefully reviewed this complaint, and conclude that, in its

current form, the complaint fails to state a claim upon which relief can be granted.

Accordingly, for the reasons set forth below, it is recommended that the amended

complaint be dismissed.

II.   **Discussion**

A.   **Screening of *Pro Se* Prisoner Complaints–Standard of Review**

This Court has a statutory obligation to conduct a preliminary review of *pro se*

complaints which seek redress against government officials.  Specifically, we are

obliged to review the complaint pursuant to 28 U.S.C. § 1915A which provides, in

pertinent part:

2

**(a) Screening**. - The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a  prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

**(b) Grounds for dismissal**. - On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-

(1) is frivolous, malicious, or fails to state a claim upon which relief may be  granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

Under Section 1915A, the Court must assess whether a *pro se* complaint "fails to state a claim upon which relief may be granted."  This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (12007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal  –U.S.–, 129 S.Ct. 1937 (2009) pleading standards

> have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff.  Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994).  However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged."  Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).  As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

4

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss.  In Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  Id. at 1950.  According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 1949.  Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.  As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District

Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

In our view, these pleading standards apply to all aspects of the Court's threshold analysis of a complaint's legal sufficiency. Thus, we will apply this analysis both when assessing the adequacy of the factual assertions set forth in the amended complaint, and when examining whether a complaint properly invokes the jurisdiction of this Court.

### B.   In its Current Form This Complaint Fails to State A Claim Upon Which Relief Can Be Granted

In this case, dismissal of this complaint is warranted because Reddick's complaint fails to meet the substantive standards required by law, in that it does not

set forth a "short and plain" statement of a cognizable violation of some right guaranteed by the Constitution or laws of the United States. The flaws in the *pro se* complaint lodged by Reddick are discussed separately below.

> **1.** **While a State Criminal Case is Pending Against Reddick This Court Should Abstain From Ruling Upon His Claims for Injunctive Relief.**

At the outset, we note that the plaintiff has requested a permanent injunction, in the form of an order "to send the FBI to Cumberland County Prison to issue a injunction for [Reddick's] release." (Id.) Thus, at bottom, Reddick's *pro se* complaint seeks to enjoin the State from pursuing its pending criminal prosecution of the plaintiff. To the extent that Reddick's complaint invites this Court to enjoin a pending state criminal case, this *pro se* pleading runs afoul of a settled tenet of federal law, the <u>Younger</u> abstention doctrine.

The <u>Younger</u> abstention doctrine is inspired by basic considerations of comity that are fundamental to our federal system of government. As defined by the courts: "<u>Younger</u> abstention is a legal doctrine granting federal courts discretion to abstain from exercising jurisdiction over a claim when resolution of that claim would interfere with an ongoing state proceeding. <u>See Younger v. Harris</u>, 401 U.S. 37, 41 (1971) ('[W]e have concluded that the judgment of the District Court, enjoining appellant Younger from prosecuting under these California statutes, must be reversed as a violation of the national policy forbidding federal courts to stay or enjoin

pending state court proceedings except under special circumstances.')." <u>Kendall v.</u>

<u>Russell</u>, 572 F.3d 126, 130 (3d Cir. 2009).

This doctrine, which is informed by principles of comity, is also guided by

these same principles in its application.  As the United States Court of Appeals for

the Third Circuit has observed:

> "A federal district court has discretion to abstain from exercising
> jurisdiction over a particular claim where resolution of that claim in
> federal court would offend principles of comity by interfering with an
> ongoing state proceeding." <u>Addiction Specialists, Inc. v. Twp. of</u>
> <u>Hampton</u>, 411 F.3d 399, 408 (3d Cir.2005) (citing <u>Younger v. Harris</u>,
> 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)). As noted earlier, the
> <u>Younger</u> doctrine allows a district court to abstain, but that discretion
> can properly be exercised only when (1) there are ongoing state
> proceedings that are judicial in nature; (2) the state proceedings
> implicate important state interests; and (3) the state proceedings afford
> an adequate opportunity to raise federal claims. <u>Matusow v. Trans-</u>
> <u>County Title Agency, LLC</u>, 545 F.3d 241, 248 (3d Cir.2008).

> <u>Kendall v. Russell</u>, 572 F.3d at 131.

Once these three legal requirements for <u>Younger</u> abstention are met, the

decision to abstain rests in the sound discretion of the district court and will not be

disturbed absent an abuse of that discretion. <u>Lui v. Commission on Adult</u>

<u>Entertainment Establishments</u>, 369 F.3d 319, 325 (3d Cir. 2004).  Moreover, applying

these standards, federal courts frequently abstain from hearing matters which

necessarily interfere with on-going state criminal cases. <u>Lui v. Commission on Adult</u>

Entertainment Establishments, 369 F.3d 319 (3d Cir. 2004); Zahl v. Harper, 282 F.3d 204 (3d Cir. 2002).

In this case, Reddick's *pro se* complaint reveals that all of the legal prerequisites for Younger abstention are present in this case.  First, it is evident that there are on-going state criminal proceedings in this case.  Second, it is also apparent that those proceedings afford Reddick a full and fair opportunity to litigate the issues raised in this lawsuit in his pending state case.  Indeed, we encourage Reddick, through his state counsel, to promptly address his claim that he is not the man wanted by authorities on these state charges with the state courts.  Finally, it is clear that the state proceedings implicate important state interests, since this matter involves state criminal law enforcement, an issue of paramount importance to the state. See, e.g., Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319 (3d Cir. 2004); Zahl v. Harper, 282 F.3d 204 (3d Cir. 2002).

Since the legal requirements for Younger abstention are fully met here, the decision to abstain rests in the sound discretion of this Court. Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319, 325 (3d Cir. 2004).  However, given the important state interest in enforcement of its criminal laws, and recognizing that the state courts are prepared to fully address the merits of this matter, we believe that the proper exercise of this discretion weighs in favor of abstention and dismissal of this federal case at the present time.  Lui v. Commission on Adult Entertainment

Establishments, 369 F.3d 319 (3d Cir. 2004);  Zahl v. Harper, 282 F.3d 204 (3d Cir. 2002).

> **2.**     **In its Present Form, Reddick's *Pro Se* Complaint Fails to State a Claim For Damages Upon Which Relief Can Be Granted**

Moreover, in its current form, Reddick's *pro se* complaint fails to state a claim for damages against any of the defendants named in this pleading.  In this case the gist of Reddick's claims is that the defendants violated his constitutional rights through their false imprisonment of the plaintiff.  This claim implicates Reddick's rights under the Fourth Amendment to the United States Constitution, which provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend IV.  Under the Fourth Amendment, an arrest without probable cause is a constitutional violation that may be redressed under 42 U.S.C. § 1983.  See Walmsley v. Philadelphia, 872 F.2d 546, 551 (3d Cir. 1989) (citing Patzig v. O'Neill, 577 F.2d 841, 848 (3d Cir. 1978).  However, in order to make out a false arrest or false imprisonment claim, a plaintiff must demonstrate that police lacked probable cause to arrest.  Groman v. Twp. of Manalpan, 47 F.3d 628, 634 (3d Cir. 1995). Similarly:

> To prove malicious prosecution [false arrest or false imprisonment] under section 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003).

Here, Reddick simply has not pleaded facts which will permit a finding that the defendants named in this complaint have conspired to falsely imprison him. First, there is no showing that these defendants initiated these criminal proceedings. Quite the contrary, it seems that Reddick's prosecution was initiated by other authorities, and the jailers named in this complaint are merely complying with court orders directing that he be detained on these pending charges. In addition, it is evident that, at present, these proceedings have not ended in the plaintiff's favor, another requisite of a false imprisonment claim. Further, Reddick has not pleaded facts showing that this imprisonment was undertaken without probable cause. Quite the contrary, one of the few well-pleaded facts set forth in Reddick's complaint is his assertion that he was extradited from New Jersey to Pennsylvania following his arrest on some other unspecified charge. That extradition order typically could only be entered upon a showing of probable cause, or a waiver of a probable cause hearing in New Jersey. Therefore, Reddick's complaint on its face strongly suggests that a probable cause determination has been made, or waived by Reddick, prior to his incarceration in the

Cumberland County Prison.  Finally, Reddick has not alleged any facts showing that these prison officials have acted maliciously in housing him in jail.  Rather, it appears that the prison officials are merely complying with legal process by holding Reddick pending resolution of these state charges.

Moreover, Reddick's current complaint is deficient in yet another respect. With respect to the individual defendants named in his complaint, Reddick's sole allegation is that he informed them of the misnomer with respect to his first name, and they have not acted upon his complaints.  This assertion, standing alone, is insufficient to state a constitutional claim against these prison officials.  To state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution.  Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980).  Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

> "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d

1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

As the Supreme Court has observed:

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.* . . . See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v. Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); Robertson v. Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution

Ashcroft v. Iqbal,  129 S.Ct. 1937, 1948 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the alleged misdeeds of their subordinates. O'Connell v. Sobina, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004).

Nor can inmates  sustain constitutional claims against prison officials based solely upon assertions that those officials failed to adequately investigate their past

grievances.  Inmates do not have a constitutional right to a prison grievance system.

See Jones, 433 U.S. at 137-138; Speight v. Sims, No. 08-2038, 283 F. App'x 880,

2008 WL 2600723 at *1 (3d. Cir. June 30, 2008) (citing Massey v. Helman, 259 F.3d

641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers

no liberty interest on a prisoner.").  Consequently, dissatisfaction with response to an

inmate's grievances does not support a constitutional claim. See also Alexander v.

Gennarini, 144 F. App'x. 924 (3d Cir. 2005) (involvement in post-incident grievance

process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D.

D.C. 1995) (because prison grievance procedure does not confer any substantive

constitutional rights upon prison inmates, the prison officials' failure to comply with

grievance procedure is not actionable).  See also Cole v. Sobina, No. 04-99J, 2007

WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison

administrative appeal process does not implicate a constitutional concern.").  As the

United States Court of Appeals for the Third Circuit recently observed when

disposing of a similar claim by another inmate:

> Several named defendants, such as the Secretaries of the Department of
> Corrections or Superintendents, were named only for their supervisory
> roles in the prison system. The District Court properly dismissed these
> defendants and any additional defendants who were sued based on their
> failure to take corrective action when grievances or investigations were
> referred to them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d
> Cir.1988) (defendant in a civil rights action must have personal
> involvement in the alleged wrongs; liability cannot be predicated solely
> on the operation of *respondeat superior* ); see also Antonelli v. Sheahan,
> 81 F.3d 1422, 1430 (7th Cir.1996) (state's inmate grievance procedures

do not give rise to a liberty interest protected by the Due Process Clause)

Pressley v. Beard, 266 F.App'x 216, 218 (3d Cir. 2008).

In this case, fairly construed, Reddick's claims against these defendants consist of little more than assertions of *respondeat superior* liability, coupled with dissatisfaction with their processing of this inmate's past complaints, assertions which as a matter of law do not suffice to state a constitutional tort claim. Therefore, these defendants are entitled to be dismissed from this case.

Finally, Reddick's claims against the county prison, and county, as institutional entities fail because these entities can only be held liable if the plaintiff alleges and shows that the constitutional infractions at issue were a product of some agency custom or policy. See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 692 (1978);  Connick v. Thompson, – U.S.– , 131 S.Ct. 1350, 1359 (2011).  Here, Reddick has not alleged that Cumberland County has adopted a custom or policy of falsely imprisoning inmates.  Therefore, his institutional liability claims against the county prison as an entity simply fail.

While this screening merits analysis calls for dismissal of this action in its current form, we recommend that Reddick  be given another, final opportunity to further litigate this matter by endeavoring to promptly file an amended complaint. We recommend this course mindful of the fact that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the

complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend is not necessary in a case such as this where amendment would be futile or result in undue delay, Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Accordingly, it is recommended that the Court provide the plaintiff with an opportunity to correct these deficiencies in the *pro se* complaint, by dismissing this deficient complaint at this time without prejudice to one final effort by the plaintiff to comply with the rules governing civil actions in federal court.

## III.   Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiff's motion for leave to proceed *in forma pauperis* be GRANTED (Doc. 4), but that the plaintiff's complaint be dismissed without prejudice to the plaintiff endeavoring to correct the defects cited in this report, provided that the plaintiff acts within 20 days of any dismissal order.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo

determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 1st day of September, 2011.

*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge