# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MITCHELL REDDICK,** : | Civil No. 1:11-CV-1600 |
| : | |
| **Plaintiff,** : | |
| : | (Chief Judge Kane) |
| v. : | |
| : | (Magistrate Judge Carlson) |
| **CUMBERLAND COUNTY PRISON,** : | |
| **et al.,** : | |
| : | |
| **Defendants.** : | |

## REPORT AND RECOMMENDATION

### I.   Statement of Facts and of the Case

On August 25, 2011, the plaintiff, Mitchell Reddick, a prisoner housed at the Cumberland County Prison, filed this federal civil rights action. (Doc. 1) Reddick's *pro se* complaint was a spare document, which simply alleged as follows:

> "On June 24, 2011 I was arrested in NJ. On Aug. 2, 2011 I was extradited to PA. On Aug. 4, 2011 I was brought to Cumberland County Prison. Upon arriving I told them my name. Aug. 19, 2011 after countless contact I'm being detained under the name Lameek Reddick. I contacted the booking office who verified by fingerprints I'm Mitchell not Lameek....."

(Doc.1)

On the basis of this alleged misnomer relating to his first name, Reddick asserted that he was "being held under false imprisonment."(Id.) Reddick's complaint then named the prison, the warden, the deputy warden, a corrections captain, a corrections sergeant and two corrections officers as defendants, and sought far-reaching injunctive and compensatory relief from these defendants, including a court order "to send the FBI to Cumberland County Prison to issue a injunction for [Reddick's] release", as well as damages in the amount of $1,000,000. (Id.)

On August 26, 2011, at the inception of this case, this Court notified the plaintiff of his obligations as a *pro se* litigant in a practice order, stating in clear and precise terms as follows:

> C. A Pro Se Plaintiff's Obligation to Inform the Court of Address Changes.
>
> A *pro* se plaintiff has the affirmative obligation to keep the court informed of his or her current address. If the plaintiff changes his or her address while this lawsuit is being litigated, the plaintiff shall immediately inform the court of the change, in writing. If the court is unable to communicate with the plaintiff because the plaintiff has failed to notify the court of his or her address, the plaintiff will be deemed to have abandoned the lawsuit.

(Doc. 2. p.4)

Along with this *pro se* complaint, Reddick filed a motion for leave to proceed *in forma pauperis*. (Doc. 4) On September 1, 2011, we granted this motion to proceed

*in forma pauperis*, but as part of our legally-mandated screening of *pro se*, *in forma pauperis* cases, we carefully reviewed this complaint, and concluded that, in its current form, the complaint failed to state a claim upon which relief can be granted. Accordingly, we recommended that the complaint be dismissed, but that Reddick be given an opportunity to file an amended complaint curing the defects initially noted in his pleadings. (Doc. 7)  Reddick then sought leave to amend his complaint, (Doc. 8), which was granted by this Court. (Doc. 11)  Reddick was instructed to file a proper, amended complaint on or before October 31, 2011. (Id.)

Following the entry of this order Reddick has taken no action to comply with the Court's order, and the October 31, 2011, deadline for compliance with that order has now passed.  Moreover, we have received notice that mail sent to Reddick at the address which he provided to the Court has twice been returned as undeliverable, indicating that Reddick has failed to abide by this basic court-ordered obligation to keep the Court informed of his whereabouts. (Docs. 12 and 13)

On these facts, where Reddick's complaint is deeply flawed; Reddick is not in compliance with court orders; Reddick's current whereabouts are unknown; and Reddick's inability or unwillingness to litigate the case which he has filed is frustrating efforts to resolve this matter, we recommend that the case be dismissed.

**II.     Discussion**

Rule 41(b) of the Federal Rules of Civil Procedure authorizes a court to dismiss a civil action for failure to prosecute, stating that: " If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). Decisions regarding dismissal of actions for failure to prosecute rest in the sound discretion of the court, and will not be disturbed absent an abuse of that discretion. Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002)(citations omitted). That discretion, however, while broad is governed by certain factors, commonly referred to as Poulis factors. As the United States Court of Appeals for the Third Circuit has noted:

> To determine whether the District Court abused its discretion [in dismissing a case for failure to prosecute], we evaluate its balancing of the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir.1984).

Emerson, 296 F.3d at 190. Recognizing the broad discretion conferred upon the district court in making judgments weighing these six factors, the court of appeals has frequently sustained such dismissal orders where there has been a pattern of dilatory

conduct by a *pro se* litigant who is not amenable to any lesser sanction. See, e.g., Emerson v. Thiel College, supra; Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d Cir. 2007); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007).

In this case, a dispassionate assessment of the Poulis factors weighs heavily in favor of dismissing this action. At the outset, a consideration of the first Poulis factor, the extent of the party's personal responsibility, shows that the delays in this case are entirely attributable to the plaintiff, who has failed to abide by court orders and has now made communication by the Court with this party virtually impossible. Similarly, the second Poulis factor– the prejudice to the adversary caused by the failure to abide by court orders–also calls for dismissal of this action. The plaintiff's failures to communicate with the Court, comply with court orders, or provide a means for us to communicate with him, now delay the resolution of this action. In such instances, dismissal of the case clearly rests in the discretion of the trial judge. Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007) (failure to timely serve pleadings compels dismissal); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d Cir. 2007) (failure to comply with discovery compels dismissal); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007) (failure to file amended complaint prejudices defense and compels dismissal).

When one considers the third Poulis factor–the history of dilatoriness on the plaintiff's part–it becomes clear that dismissal of this action is now appropriate. The plaintiff has now failed to timely file pleadings, and comply with orders of the Court, and we are utterly unable to communicate with the plaintiff, whose whereabouts are unknown.

The fourth Poulis factor–whether the conduct of the party or the attorney was willful or in bad faith–also cuts against the plaintiff. At this juncture, when the plaintiff has failed to comply with instructions of the Court directing the plaintiff to take specific actions in this case, the Court is compelled to conclude that the plaintiff's actions are not accidental or inadvertent but instead reflect an intentional disregard for this case and the Court's instructions.

While Poulis also enjoins us to consider a fifth factor, the effectiveness of sanctions other than dismissal, cases construing Poulis agree that in a situation such as this case, where we are confronted by a *pro se* litigant who will not comply with the rules or court orders, lesser sanctions may not be an effective alternative. See, e.g., Briscoe v. Klaus, 538 F.3d 252, 262-63 (3d Cir. 2008); Emerson, 296 F.3d at 191. This case presents such a situation where the plaintiff's status as a *pro se* litigant severely limits the ability of the Court to utilize other lesser sanctions to ensure that this litigation progresses in an orderly fashion. In any event, by entering our prior

orders, and counseling the plaintiff on his obligations in this case, we have endeavored to use lesser sanctions, but to no avail. The plaintiff still declines to obey court orders, and otherwise ignores his responsibilities as a litigant. Since lesser sanctions have been tried, and have failed, only the sanction of dismissal remains available to the Court.

Finally, under Poulis we are cautioned to consider one other factor, the meritoriousness of the plaintiff's claims. In our view, consideration of this factor cannot save the plaintiff's case from dismissal. Indeed, this Court has already concluded that the plaintiff failed to state a valid cause of action, but permitted him one last opportunity to amend his pleadings, which he has now forfeited by failing to abide by the deadline given to her by the Court.

In this regard, at the outset, we note that the plaintiff has requested a permanent injunction, in the form of an order "to send the FBI to Cumberland County Prison to issue a injunction for [Reddick's] release." (Id.) Thus, at bottom, Reddick's *pro se* complaint seeks to enjoin the State from pursuing its pending criminal prosecution of the plaintiff. To the extent that Reddick's complaint invites this Court to enjoin a pending state criminal case, this *pro se* pleading runs afoul of a settled tenet of federal law, the Younger abstention doctrine.

The Younger abstention doctrine is inspired by basic considerations of comity that are fundamental to our federal system of government. As defined by the courts: "Younger abstention is a legal doctrine granting federal courts discretion to abstain from exercising jurisdiction over a claim when resolution of that claim would interfere with an ongoing state proceeding. See Younger v. Harris, 401 U.S. 37, 41 (1971) ('[W]e have concluded that the judgment of the District Court, enjoining appellant Younger from prosecuting under these California statutes, must be reversed as a violation of the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances.')." Kendall v. Russell, 572 F.3d 126, 130 (3d Cir. 2009).

This doctrine, which is informed by principles of comity, is also guided by these same principles in its application. As the United States Court of Appeals for the Third Circuit has observed:

> "A federal district court has discretion to abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would offend principles of comity by interfering with an ongoing state proceeding." Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399, 408 (3d Cir.2005) (citing Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)). As noted earlier, the Younger doctrine allows a district court to abstain, but that discretion can properly be exercised only when (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford

an adequate opportunity to raise federal claims. Matusow v. Trans-County Title Agency, LLC, 545 F.3d 241, 248 (3d Cir.2008).

Kendall v. Russell, 572 F.3d at 131.

Once these three legal requirements for Younger abstention are met, the decision to abstain rests in the sound discretion of the district court and will not be disturbed absent an abuse of that discretion. Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319, 325 (3d Cir. 2004). Moreover, applying these standards, federal courts frequently abstain from hearing matters which necessarily interfere with on-going state criminal cases. Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319 (3d Cir. 2004); Zahl v. Harper, 282 F.3d 204 (3d Cir. 2002).

In this case, Reddick's *pro se* complaint revealed that all of the legal prerequisites for Younger abstention are present in this case. First, it was evident that there were on-going state criminal proceedings in this case. Second, it was also apparent that those proceedings afforded Reddick a full and fair opportunity to litigate the issues raised in this lawsuit in his pending state case. Finally, it was clear that the state proceedings implicated important state interests, since this matter involves state criminal law enforcement, an issue of paramount importance to the state. See, e.g., Lui

v. Commission on Adult Entertainment Establishments, 369 F.3d 319 (3d Cir. 2004); Zahl v. Harper, 282 F.3d 204 (3d Cir. 2002).

Since the legal requirements for Younger abstention are fully met here, the decision to abstain rests in the sound discretion of this Court. Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319, 325 (3d Cir. 2004). However, given the important state interest in enforcement of its criminal laws, and recognizing that the state courts are prepared to fully address the merits of this matter, we believe that the proper exercise of this discretion continues to weigh in favor of abstention and dismissal of this federal case at the present time. Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319 (3d Cir. 2004); Zahl v. Harper, 282 F.3d 204 (3d Cir. 2002).

Moreover, in its current form, Reddick's *pro se* complaint also failed to state a claim for damages against any of the defendants named in this pleading. In this case the gist of Reddick's claims was that the defendants violated his constitutional rights through their false imprisonment of the plaintiff. This claim implicated Reddick's rights under the Fourth Amendment to the United States Constitution, which provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and now Warrants shall issue, but upon probable cause, supported by

> Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend IV. Under the Fourth Amendment, an arrest without probable cause is a constitutional violation that may be redressed under 42 U.S.C. § 1983. See Walmsley v. Philadelphia, 872 F.2d 546, 551 (3d Cir. 1989) (citing Patzig v. O'Neill, 577 F.2d 841, 848 (3d Cir. 1978). However, in order to make out a false arrest or false imprisonment claim, a plaintiff must demonstrate that police lacked probable cause to arrest. Groman v. Twp. of Manalpan, 47 F.3d 628, 634 (3d Cir. 1995). Similarly:

> To prove malicious prosecution [false arrest or false imprisonment] under section 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003).

Here, Reddick simply did not plead facts which would permit a finding that the defendants named in this complaint conspired to falsely imprison him. First, there is no showing that these defendants initiated these criminal proceedings. Quite the contrary, it seemed that Reddick's prosecution was initiated by other authorities, and

the jailers named in this complaint are merely complying with court orders directing that he be detained on these charges. In addition, it is evident that, when this complaint was filed, these proceedings had not ended in the plaintiff's favor, another requisite of a false imprisonment claim. Further, Reddick did not plead facts showing that this imprisonment was undertaken without probable cause. Quite the contrary, one of the few well-pleaded facts set forth in Reddick's complaint was his assertion that he was extradited from New Jersey to Pennsylvania following his arrest on some other unspecified charge. That extradition order typically could only be entered upon a showing of probable cause, or a waiver of a probable cause hearing in New Jersey. Therefore, Reddick's complaint on its face strongly suggested that a probable cause determination had been made, or waived by Reddick, prior to his incarceration in the Cumberland County Prison. Finally, Reddick did not allege any facts showing that these prison officials acted maliciously in housing him in jail. Rather, it appeared that the prison officials were merely complying with legal process by holding Reddick pending resolution of these state charges.

Reddick's current complaint was deficient in yet another respect. With respect to the individual defendants named in his complaint, Reddick's sole allegation is that he informed them of the misnomer with respect to his first name, and they had not acted upon his complaints. This assertion, standing alone, is insufficient to state a

constitutional claim against these prison officials. To state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution. Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980). Constitutional tort liability is personal in nature and can only follow from personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

> In particular, with respect to prison supervisors it is well-established that:
> "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

> As the Supreme Court has observed:
>
> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . . See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v. Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); Robertson v.

> <u>Sichel</u>, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to <u>Bivens</u> and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution

<u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1948 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the alleged misdeeds of their subordinates. <u>O'Connell v. Sobina</u>, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); <u>Neuburger v. Thompson</u>, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004).

    Nor can inmates sustain constitutional claims against prison officials based solely upon assertions that those officials failed to adequately investigate their past grievances. Inmates do not have a constitutional right to a prison grievance system. <u>See</u> <u>Jones</u>, 433 U.S. at 137-138; <u>Speight v. Sims</u>, No. 08-2038, 283 F. App'x 880, 2008 WL 2600723 at *1 (3d. Cir. June 30, 2008) (citing <u>Massey v. Helman</u>, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). Consequently, dissatisfaction with response to an

inmate's grievances does not support a constitutional claim. See also Alexander v. Gennarini, 144 F. App'x. 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable). See also Cole v. Sobina, No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern."). As the United States Court of Appeals for the Third Circuit recently observed when disposing of a similar claim by another inmate:

> Several named defendants, such as the Secretaries of the Department of Corrections or Superintendents, were named only for their supervisory roles in the prison system. The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988) (defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior* ); see also Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir.1996) (state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause)

Pressley v. Beard, 266 F. App'x 216, 218 (3d Cir. 2008).

In this case, fairly construed, Reddick's claims against these defendants consisted of little more than assertions of *respondeat superior* liability, coupled with

15

dissatisfaction with their processing of this inmate's past complaints, assertions which as a matter of law do not suffice to state a constitutional tort claim. Therefore, these defendants remain entitled to dismissal from this case.

Finally, Reddick's claims against the county prison, and county, as institutional entities failed because these entities can only be held liable if the plaintiff alleges and shows that the constitutional infractions at issue were a product of some agency custom or policy. See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 692 (1978); Connick v. Thompson, – U.S.– , 131 S.Ct. 1350, 1359 (2011). Here, Reddick did not allege that Cumberland County had adopted a custom or policy of falsely imprisoning inmates. Therefore, his institutional liability claims against the county prison as an entity simply failed.

Therefore, all of the Poulis factors call for dismissal of this case.

We recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, See Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Here, we provided Reddick with this opportunity, but to no avail. Reddick has not amended his complaint, and his whereabouts are unknown. Since Reddick's *pro se* complaint still does not comply

with these pleading rules, and does not contain sufficient factual recitals to state a claim upon which relief may be granted, these allegations should be dismissed under 28 U.S.C. § 1915A, and Rule 12(b)(6) of the Federal Rules of Civil Procedure. Moreover, since the factual and legal grounds proffered in support of the complaint make it clear that he has no right to relief, granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Therefore, it is recommended that the complaint be dismissed without further leave to amend.

### III. Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiff's complaint be dismissed with prejudice for failure to prosecute pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo

determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 1st day of November, 2011.

                                      ***S/Martin C. Carlson***
                                      Martin C. Carlson
                                      United States Magistrate Judge